Filed 3/19/24  P. v . Rice CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>DERRICK LAMONTE RICE,<br><br>  Defendant and Appellant. | F085745<br><br>(Super. Ct. No. BF184747A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Caely Fallini and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Appellant Derrick Lamonte Rice was convicted of attempted murder, assault with a firearm, unlawful possession of a firearm, and unlawful possession of ammunition. The jury found true that the attempted murder was deliberate and premeditated, and that appellant personally and intentionally discharged a firearm causing great bodily injury. In a bifurcated court trial, the trial court found true that appellant suffered two prior serious felony convictions under Penal Code section 667, subdivision (a)[1] and found true various aggravating sentencing factors. Appellant was sentenced to an aggregate term of 67 years to life consecutive to a determinate term of 10 years in state prison.

On appeal, appellant claims there was insufficient evidence to support the jury's finding that the attempted murder was deliberate and premeditated, that his counsel was prejudicially ineffective for failing to object to his statements to police which were obtained in violation of *Miranda*,[2] and that the trial court erroneously imposed two five-year prior serious felony conviction enhancements under section 667, subdivision (a)(1). The People agree that one of the five-year enhancements under section 667, subdivision (a)(1) should be stricken but reject appellant's remaining claims.

We agree with the parties and remand for the trial court to strike one of the five-year prior serious felony conviction enhancements under section 667, subdivision (a)(1) and conduct a full resentencing. In all other respects, we affirm the judgment.

**FACTUAL BACKGROUND**

**I.     Prosecution Evidence**

On March 14, 2021, Officer Peter Lawson of the Bakersfield Police Department was dispatched to 19th Street in the City of Bakersfield after being notified of a shooting at that location. There was an indication that five shots were fired. Lawson's body

---

[1]     Hereinafter, all undesignated statutory references are to the Penal Code.

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

2.

camera footage from March 14, 2021 while he responded to the intersection of 19th Street and M Street was entered into evidence and played for the jury. Lawson did not locate any shell casings in that area. Lawson explained that when a semi-automatic firearm is shot, a shell casing is expelled. However, when a revolver is shot, the shell casings are kept in the cylinder.

Lawson also received a call about a gunshot victim that night and went to the hospital to interview him. Lawson identified the victim as Deandre D. Lawson observed a puncture wound on the front of Deandre D.'s right shoulder and a puncture wound on the back of his shoulder. The injuries appeared consistent with a gunshot wound. Photographs of the injuries were submitted into evidence. Deandre D.'s clothing also had puncture holes at the right shoulder: one at the back of the shoulder, and two at the front of the shoulder, indicating the bullet entered from the back, fragmented, and exited out the front. Deandre D. told Lawson that he walked to the hospital. To Lawson's knowledge, that was the only shooting that had occurred that night.

On March 18, 2021, Detective Christian Hernandez was assigned to investigate the shooting that occurred on March 14, 2021 at the intersection of 19th Street and M Street. Hernandez went to the location to look for any video surveillance of the shooting. Hernandez was able to obtain surveillance video footage from American Business Machines.

Saretta Micciche was the operations director at American Business Machines. Micciche oversaw the IT department, which handles the security cameras. There were 10 cameras at the 18th Street location, with four cameras facing towards 19th Street and M Street. The cameras were motion activated, which recorded when triggered and then saved the recording.

Detective Hernandez was able to review surveillance video footage from American Business Machines for March 14, 2021. Surveillance video from that date was entered into evidence and played for the jury. The video showed a group of about three

subjects being followed by a separate group of about three subjects. Hernandez noticed that all the subjects came from around a corner where the Hart Hotel was located. In the first group, one of the subjects wore a dark jacket with a hood and a second subject wore a jacket with decals over a red sweatshirt with a hood. One of the subjects in the second group had on a white hat and was wearing a white shirt and a dark colored jacket. The subject wearing the white hat kept his hand in his waistband while he quickened his pace to catch up to the first group. There appeared to be some communication between the two groups, but the first group continued to walk away. Then, the subject with the white hat removed his hand from his waistband revealing a firearm. He pointed the firearm at the subject wearing the dark jacket with a hood first and fired one shot. The video showed the subject wearing the jacket with decals move to the right until he was outside the camera's field of vision. The subject in the white hat turned and pointed the firearm in the direction of the subject wearing the jacket with decals and fired three to four shots.

After viewing the surveillance footage, Hernandez responded to the Hart Hotel and made contact with Pruthviraj Zala and his parents. Zala's parents leased the Hart Hotel and lived there during the time of March 2021. Zala would visit them at the Hart Hotel every day. There were 16 surveillance cameras at the hotel: some in the hallway, some facing the main street and some facing the back. Zala explained that the cameras are motion activated and that once they are triggered to record, the video recording is saved for a month and a half. On March 18, 2021, when Hernandez arrived at the Hart Hotel, Zala's father showed him the surveillance videos from March 14, 2021 and Zala uploaded the videos to a link for Hernandez. Hernandez recorded the video surveillance with his department-issued phone in case the footage got lost or erased. Zala recognized appellant in the surveillance video and said he went by the name Day Day.[3] Zala had

---

[3]   Witness Regan White testified that she knew appellant from the Hart Hotel. She knew appellant by the name Day Day.

seen appellant many times at the Hart Hotel and had spoken to him. The surveillance video from the Hart Hotel was admitted into evidence and played for the jury.

Hernandez compared what the shooter was wearing in the American Business Machines video and matched it to a subject in the Hart Hotel video wearing the same or very similar clothing. Hernandez learned that appellant was at the Hart Hotel that day.

Officer Cortez Summit responded to the Hart Hotel on March 18, 2021 to assist with the apprehension of appellant. Summit's body camera footage of the initial contact and its accompanying transcript were admitted into evidence. Hernandez was present during appellant's arrest and later interviewed appellant at the police department. Hernandez advised appellant of his *Miranda* rights, which appellant waived in order to speak with Hernandez. The transcript and recording of the interview were entered into evidence. The recording was played for the jury.

Hernandez testified that neither appellant nor the victim were cooperative with the investigation and refused to give Hernandez the identity of the other people in the video. As such, Hernandez was not able to interview any of the witnesses. Neither appellant nor the victim provided Hernandez with any explanation about what happened that night. Hernandez met with the victim on March 23, 2021 in order to have him identify the shooter out of a photographic lineup. Hernandez observed that the victim appeared frightened. No one was selected from the lineup because the victim refused to participate.

Doctor Kian Amizian[4] was the physician in charge of Deandre D.'s care in the emergency room on March 14, 2021. Deandre D. had a one centimeter by one centimeter wound at the back of his shoulder and a 1.5 centimeter by 1.5 centimeter wound at the front of his shoulder. The wound was very close to the subclavian blood vessel, which is

---

[4]     Dr. Amizian spelled his name A-z-i-m-i-a-n, but it is recorded as Amizian throughout the entire record. Therefore, we use the name Dr. Amizian for consistency of the record.

the main branch that supplies blood to the arm, and the brachial plexus, which is a bundle of nerves that goes into the arm and integrates all the parts of the arm. Dr. Amizian considered Deandre D. to be "very, very lucky" that the bullet passed by these areas by just a few centimeters. Dr. Amizian opined that the bullet most likely hit Deandre D. from behind since the entry wound appeared to be on the back of the shoulder where the wound was smaller and the exit wound was on the front where the wound was larger. No other bullet hole wounds were located. An x-ray of Deandre D.'s shoulder revealed multiple bullet fragments still inside the shoulder area, which are not typically removed. No fragments were found in the chest area. Deandre D. also had an abrasion on his arm from falling to the ground after he was shot.

Deandre D.'s mother recognized her son, Deandre D., in the surveillance video wearing his favorite jacket with the decals on it when he got shot. After the incident, Deandre D.'s mother noticed the jacket had a hole on the right shoulder area.

## II. Verdict and Sentencing

The jury found appellant guilty of attempted murder (§§ 664/187, subd. (a), count 1), finding true that it was willful, deliberate and premeditated (§ 189) and that appellant personally and intentionally discharged a firearm which caused great bodily injury (§ 12022.53, subd. (d)). The jury also found appellant guilty of assault with a firearm upon Deandre D. (§ 245, subd. (a)(2), count 2) and found true that appellant personally used a firearm (§ 12022.5) and personally inflicted great bodily injury upon Deandre D. (§ 12022.7). Last, the jury found appellant guilty of being a felon in possession of a firearm (§ 29800, subd. (a)(1), count 3) and being a felon in possession of ammunition (§ 30305, subd. (a)(1), count 4).

In a bifurcated court trial, the court found true that appellant suffered two prior serious felony convictions under section 667, subdivision (a) and found true several aggravating sentencing factors. The court sentenced appellant to 42 years to life based on count 1 and the two strike priors, which was enhanced by 25 years to life pursuant to

6.

section 12022.53, subdivision (d), plus an additional 10 years for the two section 667, subdivision (a) enhancements.

## DISCUSSION

**I.    Substantial Evidence Supports the Jury's Finding that the Attempted Murder was Deliberate and Premeditated.**

Appellant contends that the evidence presented at trial was insufficient to support the jury's finding of first degree attempted murder.  The People contend sufficient evidence supports the jury's finding that the attempted murder was deliberate and premeditated.  We agree with the People.

### A.    Relevant Factual and Procedural History

Appellant was charged with attempted first degree murder on the theory that the shooting of Deandre D. was committed willfully, deliberately and with premeditation.

The jurors were instructed that to find appellant attempted to kill deliberately he must have "carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill."  The jurors were further instructed that to find that appellant attempted to kill with premeditation he must have "decided to kill before completing the act of attempted murder" and that appellant's decision to kill must have been "a cold, calculated decision to kill" rather than a decision made "rashly, impulsively, or without careful consideration of the choice and its consequences."

The prosecution argued that evidence of premeditation and deliberation was shown by appellant turning the corner and following the victim.  The prosecution argued that "[e]very step that [appellant] is taking towards [Deandre D.] is time he's reflecting and planning on what he's going to do.  Because remember, he has his firearm on him and focus[] on how he walks as he's approaching [Deandre D.]."  "I want you to focus on the number of times that [appellant] shoots and the number of times he tries to shoot."

**B.     Standard of Review**

In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Bolin* (1998) 18 Cal.4th 297, 331 (*Bolin*); *People v. Johnson* (1980) 26 Cal.3d 557, 576, 578; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319–320.) The question is whether "substantial evidence" supports the jury's decision. (*People v. Johnson*, at p. 576.) " 'Substantial evidence' means that evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined." (*People v. Conner* (1983) 34 Cal.3d 141, 149.) "While substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence'; inferences that are the result of mere speculation or conjecture cannot support a finding." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633, citations omitted; see *People v. Redmond* (1969) 71 Cal.2d 745, 755 [evidence that raises even a strong suspicion of guilt is not substantial evidence].)

Reversal is unwarranted unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*Bolin*, *supra*, 18 Cal.4th at p. 331; *People v. Redmond*, *supra*, 71 Cal.2d at p. 755.)

**C.     Applicable Law**

"An attempted murder is premeditated and deliberate if it occurs ' " 'as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' " ' " (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 121, quoting *People v. Burney* (2009) 47 Cal.4th 203, 235, superseded by statute on other grounds as stated in *People v. Robertson* (2012) 208 Cal.App.4th 965, 981; *People v. Jurado* (2006) 38 Cal.4th 72, 118 (*Jurado*).)

" 'In this context, "premeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action." ' " (*Jurado*, at p. 118; *People v. Koontz* (2002) 27 Cal.4th 1041, 1080 [" 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance."].) " ' " 'The true test is not the duration of time as much as it is the extent of the reflection.  Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.' " ' " (*People v. Gomez* (2018) 6 Cal.5th 243, 282 (*Gomez*).)  To prove the killing was " 'deliberate and premeditated,' it is not necessary to prove the defendant maturely and meaningfully reflected upon the gravity of the defendant's act."  (§ 189, subd. (d).)

In order for a killing with malice aforethought to be first degree rather than second degree murder, " '[t]he intent to kill must be ... formed upon a pre-existing reflection' " and have "been the subject of actual deliberation or forethought."  (*People v. Thomas* (1945) 25 Cal.2d 880, 900–901.)  Our Supreme Court has therefore held that " '[a] verdict of murder in the first degree ... [on a theory of a willful, deliberate, and premeditated killing] is proper only if the slayer killed "as a result of careful thought and weighing of considerations; as a *deliberate judgment* or plan; carried on cooly and steadily, [especially] according to a *preconceived design*." ' " (*People v. Anderson* (1968) 70 Cal.2d 15, 26 (*Anderson*); *People v. Caldwell* (1955) 43 Cal.2d 864, 869.)

In *Anderson*, our Supreme Court identified three categories of evidence relevant to the question of whether a murder was deliberate and premeditated:  "(1) facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing— what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or

9.

(3), would in turn support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' [citation]; (3) facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)." (See *Anderson*, *supra*, 70 Cal.2d at pp. 26–27.)

The *Anderson* factors are not exclusive, nor are they invariably determinative. (*People v. Combs* (2004) 34 Cal.4th 821, 850; *People v. Silva* (2001) 25 Cal.4th 345, 368.) However, they do provide a useful analytical "framework" to guide a reviewing court's assessment of the sufficiency of the evidence regarding premeditation and deliberation. (*People v. Thomas* (1992) 2 Cal.4th 489, 517; see *People v. Elliot* (2005) 37 Cal.4th 453, 470–471 ["[a]pplying the *Anderson* factors" to determine sufficiency of the evidence].) Evidence of planning, motive, and manner of killing are often relevant to the determination of willfulness, premeditation, and deliberation. (*Gomez*, *supra*, 6 Cal.5th at p. 282; *People v. Halvorsen* (2007) 42 Cal.4th 379, 419–420, citing *Anderson*, *supra*, 70 Cal.2d at pp. 26–27; accord *People v. Sandoval* (2015) 62 Cal.4th 394, 424.) " ' "*Anderson* was simply intended to guide an appellate court's assessment whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse. [Citation.]" ' " (*Combs*, at p. 850; *Bolin*, *supra*, 18 Cal.4th at pp. 331–332.)

### D. Analysis

Appellant contends the evidence was insufficient to support the jury's finding that the attempted murder was committed with deliberation and premeditation. Specifically, appellant argues "there was no evidence that [he] planned the shooting in advance, no evidence that he had any motive to kill the victim, and the manner of the attempted

10.

killing—a few wild shots in the general direction of the victim—suggested an 'unconscious or rash impulse hastily executed' rather than a 'preconceived design.' "

To the contrary, upon review of the record, we conclude substantial evidence supports the jury's finding that the attempted murder was deliberate and premeditated. (See *People v. Johnson*, *supra*, 26 Cal.3d at pp. 576, 578.) Premeditation is shown by the fact that appellant chose to carry a concealed loaded firearm and then pursue Deandre D. and his companions. Such actions support the inference that the shooting was " 'considered beforehand.' " (See *Jurado*, *supra*, 38 Cal.4th at p. 118.) Appellant appeared to speed up in order to catch up to Deandre D., which demonstrates " ' "preexisting thought and reflection rather than unconsidered or rash impulse." ' " (See *People v. Burney*, *supra*, 47 Cal.4th at p. 235.)

Appellant's actions also show the attempted murder was "deliberate." (See *Jurado*, *supra*, 38 Cal.4th at p. 118.) Deliberation is shown by the evidence appellant held onto a concealed loaded firearm while he followed and caught up to the victim, then pulled the firearm out from his waistband and fired it. Appellant first aimed the firearm at one of Deandre D.'s companions and fired one shot at him. Appellant then turned, aimed the loaded firearm in Deandre D.'s direction and fired multiple shots, hitting Deandre D. in his shoulder. The record shows there was enough time for appellant to have carefully thought about and weighed considerations for and against the decision to shoot at Deandre D. from when appellant followed Deandre D. to when he shot at Deandre D. (See *Jurado*, at p. 118.) As our Supreme Court has held, " ' " '[t]he true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.' " ' " (*Gomez*, *supra*, 6 Cal.5th at p. 282; *Bolin*, *supra*, 18 Cal.4th at p. 332; *People v. Perez* (1992) 2 Cal.4th 1117, 1127; *People v. Thomas*, *supra*, 25 Cal.2d at p. 900.)

11.

Additionally, the record supports the three categories of evidence identified in *Anderson* to guide our assessment of the sufficiency of the evidence regarding premeditation and deliberation: planning activity, motive, and manner of killing. (*Bolin*, *supra*, 18 Cal.4th at p. 331; see *Anderson*, *supra*, 70 Cal.2d at pp. 26–27; *People v. Thomas*, *supra*, 2 Cal.4th at p. 517.) We disagree with appellant that there was insufficient evidence of planning. Here, evidence that appellant carried and concealed a loaded firearm while he tracked and caught up to Deandre D. and his companions supports an inference of planning. While we agree with appellant the record does not show motive for the killing, the manner of killing, using the concealed loaded firearm to shoot Deandre D., supports that the killing was accomplished by a "preconceived design." (See *Anderson*, at pp. 26–27.) " '*Anderson* does not require that these factors be present in some special combination or that they be accorded a particular weight, nor is the list exhaustive. *Anderson* was simply intended to guide an appellate court's assessment whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse. [Citation.]' " (*Bolin*, at pp. 331–332; *People v. Pride* (1992) 3 Cal.4th 195, 247.)

We disagree with appellant that the facts of this case are similar to *People v. Rowland* (1982) 134 Cal.App.3d 1. In *Rowland*, the defendant was hanging out with a group of people, including the victim, on a Friday night. After midnight, the defendant drove the victim to the defendant's apartment. (*Id.* at p. 6.) At one point, Williams, who lived with the defendant, heard the sound of a female's voice, some banging, and then the sound of choking. (*Id.* at pp. 6–7.) Later, a neighbor saw the defendant place what appeared to be a body wrapped in a blanket into a vehicle and drive away. (*Id.* at p. 7.) The following Sunday morning, the body of the victim was discovered with an electrical cord around her neck. (*Ibid.*) The court found there was minimal evidence of planning and not enough of premeditation and deliberation absent evidence of motive or planning directed towards the manner of killing. (*Id.* at p. 9.) Here, on the other hand, there was

12.

strong evidence of planning, including the carrying of a concealed loaded firearm, and the planning was directed towards the intended result, which was the shooting of Deandre D.

*People v. Craig* (1957) 49 Cal.2d 313 is also readily distinguished from the facts of this case. The defendant in *Craig* told an attendant that "he would like to have a girl because he would 'like to have a little loving.' " That evening, the defendant went to a bar and threatened a woman who refused to dance with him. (*Id.* at p. 315.) The defendant left the bar with Martin, they stopped at an intersection, and then Martin left. As Martin was leaving, he saw a woman approaching. (*Id.* at pp. 315–316.) The next morning a woman's dead body was discovered strangled to death. (*Id.* at p. 316.) The court held that the record showed "a killing accomplished with great brutality, but [did] not show any premeditation." (*Id.* at p. 318.) The court relied on the fact that there was nothing in the record showing the defendant had ever seen the victim before nor "anything to show how the killing was accomplished." (*Ibid.*) Here, as discussed above, the record contains evidence of planning that is directly related to the manner of attempted murder.

We disagree with appellant's attempt to label the shooting as a " 'random' attack" and therefore, not premeditated or deliberate. As discussed, the evidence shows appellant had a plan by holding a loaded firearm as he followed the victim around the corner and quickening his steps in order to catch up to him. Appellant is seen removing his hand from his waistband, revealing the firearm, and then aiming and shooting at the first victim, then pivoting and aiming again before shooting at Deandre D. The evidence does not show a wild, random shooting as appellant suggests.

We conclude the evidence is sufficient to support the jury's finding that the attempted murder was deliberate and premeditated. (See *People v. Wharton* (1991) 53 Cal.3d 522, 546 [the relevant inquiry is whether " ' " '*any* rational trier of fact' " ' " could have been so persuaded]; *People v. Lucero* (1988) 44 Cal.3d 1006, 1020.)

13.

**II. Defense Counsel was not Ineffective for not Objecting to the Admission of Appellant's Statements to the Police.**

Appellant argues that his trial counsel rendered ineffective assistance for failing to object to the admission of his statements to the police on the grounds that the police did not properly advise him of his right to an attorney under *Miranda*. The People disagree. We conclude appellant fails to demonstrate his counsel was ineffective for failing to object to the admission of his statements to police under *Miranda*.

**A. Relevant Procedural History**

In his written pretrial motion, appellant sought, among other things, to exclude his confessions or admissions unless found to be admissible at an Evidence Code section 402 evidentiary hearing. Appellant's counsel clarified at the hearing that the motion was for "a[n] [Evidence Code section] 402 on the issue of *Miranda*." The prosecutor noted that the detective's interview with appellant was recorded and transcribed. Appellant's counsel suggested that the parties and the court review the transcript of the interview to determine whether an Evidence Code section 402 hearing was necessary to resolve the *Miranda* issue. After reviewing the transcript of the interview, defense counsel indicated, "I believe that [appellant] was properly *Mirandized*." The court stated that "there doesn't appear to be a problem [with *Miranda*.]" Defense counsel said he would not object to the admission of appellant's interview statements.

The relevant portion of the transcript of the detective advising appellant of his *Miranda* rights is as follows:

> "DET. HERNANDEZ: … All right, [appellant], like I said, there's some questions that we wanna ask you. But before we do that, I gotta read you your *Miranda* rights, 'cause you are detained, okay?
>
> "[APPELLANT]: Okay.
>
> "DET. HERNANDEZ: All right, [appellant], you have the right to remain silent. You understand?
>
> "[APPELLANT]: Yes, I do.

14.

"DET. HERNANDEZ: Anything you say may be used against you in court. Do you understand?

"[APPELLANT]: Yes.

"DET. HERNANDEZ: You have the right to talk to an attorney before and—before any questioning. Do you understand?

"[APPELLANT]: Yes.

"DET. HERNANDEZ: If you cannot [*sic*] an attorney, one will be appointed to you free of charge. Do you understand?

"[APPELLANT]: Yea, I do.

"DET. HERNANDEZ: Okay, do you want to talk to me about why you think you're here?

"[APPELLANT]: I mean, I wanna know why. I mean … I really do wanna know why."

During the interview, appellant was asked about "Saturday night, leading into … Sunday morning," and appellant could not recall where he was during that time or anything that happened during that time. Throughout the interview, appellant was evasive with his responses—even after being told by the detective that "[w]e saw you on camera, shooting a gun," "[w]e talked to the people at the hotel[,] [c]onfirmed you were there that night." Appellant denied owning a firearm, denied trying to kill anyone and denied shooting anyone.

At trial, the recorded video of appellant's interview at the police department was played for the jury.

## B.     Relevant Law

To establish ineffective assistance, appellant bears the burden of showing that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms. Appellant must also establish that absent counsel's error, it is reasonably probable that the verdict would have been more

favorable to him.  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1052–1053; see *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

"When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  "It is particularly difficult to prevail on an *appellate* claim of ineffective assistance.  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation."  (*Ibid.*)  "Failure to object rarely constitutes constitutionally ineffective legal representation."  (*People v. Boyette* (2002) 29 Cal.4th 381, 424.)

### C.    Analysis

Appellant contends that his *Miranda* advisement was inadequate because Hernandez told him he had a right to counsel before, not during, the interrogation. Appellant argues that the failure to fully advise a suspect of his *Miranda* rights violates the state and federal constitutions and requires reversal.  He notes *Miranda* held that the suspect " 'must be *clearly informed* that he has the right to consult with a lawyer and to have the lawyer with him *during interrogation*.' "

Appellant fails to meet his burden of demonstrating his trial counsel was ineffective.  (See *People v. Hernandez*, *supra*, 33 Cal.4th at pp. 1052–1053.)  As we discuss below, we conclude the *Miranda* advisement given by police was adequate. Counsel is not ineffective for failing to make frivolous or futile motions.  (*People v. Thompson* (2010) 49 Cal.4th 79, 122.)

"[T]o counteract the coercive pressure inherent in custodial surroundings, '*Miranda* announced that police officers must warn a suspect prior to questioning that he

has a right to remain silent, and a right to the presence of an attorney. [Citation.] After the warnings are given, if the suspect indicates that he wishes to remain silent, the interrogation must cease. [Citation.] Similarly, if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present. [Citation.] Critically, however, a suspect can waive these rights.' " (*People v. Williams* (2010) 49 Cal.4th 405, 425, quoting *Maryland v. Shatzer* (2010) 559 U.S. 98, 103–104.)

Specifically, "[a suspect] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." (*Miranda*, *supra*, 384 U.S. at p. 479; *Florida v. Powell* (2010) 559 U.S. 50, 59–60.) Precise language is not required in order to comply with *Miranda*. (*Florida v. Powell*, at p. 60; *California v. Prysock* (1981) 453 U.S. 355, 359 [no particular formulation] (*Prysock*).)

At issue here is *Miranda*'s third warning which requires that "an individual held for questioning 'must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation.' " (*Florida v. Powell*, *supra*, 559 U.S. at p. 60; *Miranda*, *supra*, 384 U.S. at p. 471.) The inquiry of whether this right was adequately conveyed is " 'simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by *Miranda*." ' " (*Florida v. Powell*, at p. 60; *Duckworth v. Eagan* (1989) 492 U.S. 195, 203, quoting *Prysock*, *supra*, 453 U.S. at p. 361.)

The following Supreme Court cases inform our decision here. In *Prysock*, an officer informed the suspect of his right to a lawyer's presence during questioning and of his right to counsel being appointed at no cost. (*Prysock*, *supra*, 453 U.S. at pp. 356–357.) The Court of Appeal held the advice inadequate to comply with *Miranda* because it lacked an express statement that the appointment of an attorney would occur prior to the impending interrogation. (*Prysock*, at pp. 358–359.) The United States Supreme Court reversed, noting that "nothing in the warnings … suggested any limitation on the right to

17.

the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general, including the right 'to a lawyer before [the suspect is] questioned, ... while [he is] being questioned, and all during the questioning.' " (*Id*. at pp. 360–361.)

In *People v. Wash* (1993) 6 Cal.4th 215 (*Wash*), the defendant contended his *Miranda* warning was inadequate because it failed to inform him that he was entitled to counsel during questioning. (*Id*. at p. 236.) The California Supreme Court held a *Miranda* advisement informing the suspect of his right to have an attorney before questioning " 'reasonably conveyed' " to a suspect his right to have an attorney present during questioning. (*Wash*, at p. 237.) *Wash* reasoned that "[a]lthough the warning given to defendant here deviated from the standard form … we are not persuaded … that the language was so ambiguous or confusing as to lead defendant to believe that counsel would be provided before questioning, and then summarily removed once questioning began." (*Id.* at p. 236; see also *People v. Valdivia* (1986) 180 Cal.App.3d 657, 663–664 [admonition that the defendant had the right to counsel before questioning adequately apprised the defendant of his *Miranda* rights].)

*Prysock* and *Wash* are controlling here.[5] Raising the same challenge, appellant claims his *Miranda* advisement was inadequate because the officer told him he had a right to counsel before the interrogation, but did not specify he had a right to have the attorney present during the interrogation. Here, Hernandez informed appellant, "You have the right to talk to an attorney before and—before any questioning." Hernandez informed appellant he had a right to talk to an attorney before questioning and did not say that his right to an attorney would be limited in any way. Therefore, we are satisfied that

---

[5] Appellant's reliance on a Ninth Circuit Court of Appeals decision in *United States v. Noti* (9th Cir. 1984) 731 F.2d 610 is not controlling. (See *Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 782 ["decisions of the lower federal courts, while persuasive, are not binding on [state courts]"].) Instead, we are bound by the California Supreme Court decision in *Wash*, *supra*, 6 Cal.4th 215. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

the warnings given " 'reasonably conveyed' " his right to have an attorney present during questioning.  (See *Wash*, *supra*, 6 Cal.4th at p. 237; see *People v. Lujan* (2001) 92 Cal.App.4th 1389, 1402 ["*Wash* stands for the proposition that there is sufficient compliance with *Miranda* if the accused is advised of the right to have an attorney present before questioning."].)

Consequently, any objection by defense counsel to admitting appellant's statements to the police under *Miranda* would have been futile.  Counsel is not ineffective for failing to make frivolous or futile objections.  (See *People v. Thompson*, *supra*, 49 Cal.4th at p. 122; *People v. Anderson* (2001) 25 Cal.4th 543, 587 ["Counsel is not required to proffer futile objections."].)

Even if appellant's defense counsel's performance was deficient for failing to object, appellant fails to show any error prejudiced the outcome of the case.  (See *Strickland v. Washington*, *supra*, 466 U.S. at p. 687; *People v. Hernandez*, *supra*, 33 Cal.4th at pp. 1052–1053.)  The evidence of appellant's guilt was overwhelmingly strong.  Videos captured appellant following the victim around a corner, catching up to him, pulling out a loaded firearm and then aiming and shooting at the victim.  The evidence of appellant's identity was also extremely strong.  Multiple witnesses who were familiar with appellant identified him in the video leaving the Hart Hotel around the time of the shooting.  Hernandez was able to identify appellant as the shooter in the American Business Machines video by matching his clothing to the Hart Hotel video.

We also note that appellant's statements to police are not prejudicial.  It is undisputed that appellant did not make any direct admission of guilt during his interview.  Appellant was mostly evasive and did not recall where he was the night of the shooting.  Appellant denied owning a firearm and denied shooting anyone.  When questioned directly about the shooting, appellant's responses were:  "I ain't try to kill nobody," "I'm not trying to kill nobody" and "I didn't shot [*sic*], man."  When considering the sequence

19.

of questions and responses together, it shows appellant consistently denied the officer's accusations that he shot anyone or tried to kill anyone.

Regardless, appellant's statements to police were not the focal point of the prosecutor's case. The only reference the prosecutor made to appellant's interview, was that appellant denied staying at the Hart Hotel. The focal point of the prosecutor's case rested on the videos. Therefore, even if appellant's counsel should have objected to the admission of his statements, it is not reasonably probable that the outcome would have been more favorable to appellant. (See *People v. Hernandez*, *supra*, 33 Cal.4th at pp. 1052–1053; *Strickland v. Washington*, *supra*, 466 U.S. at p. 687.)

Therefore, appellant's ineffective assistance of counsel claim fails.

### III. Section 667, Subdivision (a) Enhancements

Appellant claims that the trial court erred when it imposed two five-year enhancements under section 667, subdivision (a). The People agree.

#### A. Relevant Factual Background

The court found true that appellant had two prior serious felony convictions, which were two first degree burglary (§ 459) plea convictions on November 4, 2003, in Los Angeles County Superior Court case No. YA05545504. The record indicates that the two burglary charges were from the same complaint and information and adjudicated in the same proceeding, under the same case number.

#### B. Relevant Law

Section 667, subdivision (a)(1), provides: "A person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction that includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately."

The California Supreme Court has construed the phrase "brought and tried separately" to mean that "the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." (*In re Harris* (1989) 49 Cal.3d 131, 136; *People v. Ebner* (1966) 64 Cal.2d 297, 304 ["prior felony proceedings must be totally separate, not only during proceedings before trial but also as to those leading to the ultimate adjudication of guilt"].)

**C.     Analysis**

As the People concede, appellant's two prior serious felony burglary convictions were charged and adjudicated in the same proceeding, under the same Los Angeles County Superior Court case No. YA05545504. Since the two charges were not "brought and tried separately" as required under section 667, subdivision (a), appellant was subject to only one five-year enhancement, not two. (See *In re Harris*, *supra*, 49 Cal.3d at p. 137.) Therefore, one of the two prior serious felony conviction enhancements under section 667, subdivision (a) must be stricken. (See *People v. Jones* (2015) 236 Cal.App.4th 1411, 1417; *People v. Frausto* (2009) 180 Cal.App.4th 890, 903.)

Our Supreme Court has held that "when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Navarro* (2007) 40 Cal.4th 668, 681; see, e.g., *People v. Monroe* (2022) 85 Cal.App.5th 393, 402 [section 1172.75 requires full resentencing, not just striking an invalid enhancement].) Because striking a five-year prior serious felony conviction enhancement under section 667, subdivision (a)(1) affects the calculation of the sentence, we must remand to the trial court for full resentencing. (See *Buycks*, at p. 893.)

21.

## **DISPOSITION**

Appellant's sentence is vacated and the matter is remanded to the trial court to (1) strike one of the five-year prior serious felony conviction enhancements under section 667, subdivision (a)(1), (2) conduct a full resentencing of appellant, and (3) forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:


FRANSON, J.


DE SANTOS, J.

22.